## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MARC LINDEN, INDIVIDUALLY AND DERIVATIVELY IN THE RIGHT AND ON BEHALF OF SILVER ROAD, INC. T/A CAMP RAMBLEWOOD**<br>9315 S.W. 14th Avenue<br>Gainesville, FL 32607 | * * * * * * * |
| and | * * |
| **KAYE LINDEN, INDIVIDUALLY AND DERIVATIVELY IN THE RIGHT AND ON BEHALF OF SILVER ROAD, INC. T/A CAMP RAMBLEWOOD**<br>9315 S.W. 14th Avenue<br>Gainesville, FL 32607 | * * * * * * |
| *Plaintiffs,* | * * * |
| v. | Case No. *8:16-CV. 3091* |
| **HARRY LEFF**<br>2015 McHugh Lane<br>Phoenixville, PA 19460 | * * * * * |
| and | * * |
| **SILVER ROAD, INC.**<br>**T/A CAMP RAMBLEWOOD** | * * * |
| SERVE:  Corporation Guarantee Company<br>7945 MacArthur Boulevard<br>Suite 208<br>Cabin John, MD 20818 | * * * * * |
| *Defendants.* | * * |

## COMPLAINT

Plaintiffs Marc and Kaye Linden ("the Lindens"), collectively, as fifty percent (50%)

shareholders of Silver Road, Inc. t/a Camp Ramblewood ("Silver Road"), through undersigned

counsel, bring this action in their individual capacities and derivatively in the right and on behalf of Silver Road, against Defendant Harry Leff ("Harry Leff" or "Defendant"), and allege as follows:

1.      The Lindens and Harry Leff, along with his wife Lisa, together own Silver Road, each couple holding 50% of the company's shares as tenants by the entirety.  Silver Road owns Camp Ramblewood, a unique rustic resort that hosts group outings, company functions, and other gatherings on valuable real property in Harford County, Maryland owned by Silver Road. Since Camp Ramblewood's inception, and by agreement of the parties, Defendant Harry Leff has handled both the camp's day-to-day operations, as well as Silver Road's business and financial operations. The Lindens, who live in Florida, have relied on him for those purposes, and Harry Leff was aware of their reliance, and in fact, encouraged it.  Unfortunately, the Lindens have recently learned that throughout the course of this business relationship, Harry Leff exploited this trust, and to the detriment of Silver Road and the Lindens.  Harry Leff used Silver Road to enrich himself and to deny the Lindens the benefits and monies they were contractually entitled to receive pursuant to their Shareholders Agreement with the Lindens.  The Lindens thus seek relief against Harry Leff, both individually and derivatively on behalf of Silver Road, for breaches of the Shareholder Agreement and for breach of fiduciary duty, as well as for constructive fraud.  The Lindens also seek a full accounting, the appointment of a receiver to administer the affairs of Silver Road, as well as such other forms of relief as may be necessary to address the breaches alleged herein.

## Parties and the Premises

2.      Silver Road was incorporated in Maryland on October 26, 1987, and its headquarters are located at 929 North Howard Street, Baltimore, Maryland 21201.  Camp

Ramblewood is located at 2564 Silver Road, Darlington, Maryland 21034.  Harry Leff is both a director of Silver Road, as well as its President.

3.      The Lindens reside at 9315 S.W. 14th Avenue, Gainesville, Florida 32607 and own fifty percent (50%) of the outstanding shares of stock in Silver Road as tenants by the entireties.  Marc Linden is a physician.

4.      Harry Leff resides at 2015 McHugh Lane, Phoenixville, Pennsylvania 19460 and owns, along with his wife, the remaining fifty percent (50%) of the stock of Silver Road also as tenants by the entireties.

## Jurisdiction and Venue

5.      Jurisdiction is proper in the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum or value of $75,000.00, and is between citizens of different states.

6.      Venue is proper in the United States District Court for the District of Maryland (Northern Division) pursuant to 28 U.S.C. § 1391 because this Court is the federal judicial district where Silver Road is incorporated and where Camp Ramblewood is located.

## Facts

7.      Silver Road was established by Harry Leff and the Lindens' predecessor in interest, Morton E. Frankel ("Frankel").

8.       Harry Leff and Marc Linden had been close personal friends for many years when around 1995 Harry Leff persuaded Marc Linden that Silver Road presented a unique investment opportunity for the Lindens, who resided in Florida where Marc Linden was practicing medicine.  Harry Leff knew that the Lindens had no business experience in this

industry, but assured them that he was capable of running the business competently and profitably.

9.      Accordingly, on or about May 2, 1995, the Lindens purchased 50% of the outstanding capital stock of Silver Road from Frankel pursuant to a Stock Purchase Agreement. (**Exhibit A**). Pursuant to that Agreement, the Lindens paid Frankel $40,000.00, gave him a promissory note for the sum of $300,000.00, and assumed his pre-existing payment obligation to the Leffs of $150,000.00.  To satisfy Frankel's obligation, and per a verbal agreement between Marc Linden and Harry Leff as to the appropriate total buy-in figure, the Lindens also gave a promissory note to Harry Leff for $205,000.00, $55,000.00 more than the $150,000.00 the parties had agreed to.  That note carried a 10% interest rate.

10.     For a period of years the Lindens made payments on the notes.  In 2002 the Lindens re-financed the debt they owed to Frankel and the Leffs by borrowing money from Wachovia Bank and used the loan proceeds to extinguish the debt owed to each of them.  The Lindens paid back the Wachovia Bank loan in full by October 2007.

11.     On or about May 14, 1998, the Lindens and Harry Leff entered into a Shareholders Agreement that set forth the rights and obligations of the parties.  (**Exhibit B**).

12.     Pursuant to paragraph 3.C. of the Shareholder Agreement, Harry Leff is, and has been since its execution, "in control of the day-to-day management of the business and financial affairs of the Company."  Given his long-standing, close personal friendship with Harry Leff, Marc Linden reposed his trust in Harry Leff and depended on him to manage Silver Road fairly and honestly, and in conformity with their Shareholders Agreement.

13.     The Shareholders Agreement also sets forth terms of employment for Harry Leff and Marc Linden.  With respect to Harry Leff, among other things, the Shareholders Agreement

sets a monthly salary of three-thousand dollars ($3,000.00), *i.e.*, $36,000.00 per year, and

provides for "reimbursement of certain travel and entertainment expenses which are necessary to

the proper performance of Harry Leff's duties."

14.     With respect to Marc Linden, among other things, the Shareholders Agreement

provides that Silver Road "shall provide health insurance for Marc Linden and his family."

15.     Paragraph 4 of the Shareholders Agreement states that "[n]o shareholder shall

borrow money from the Company, or take advances on salaries or other compensation without

the written consent of the other Shareholders."

**Harry Leff Breached the Shareholders Agreement and Enriches Himself**

16.     Although the Shareholders Agreement explicitly limited the amount of salary

Harry Leff was entitled to, he routinely paid himself significantly more than the $36,000.00

annual cap that the Shareholders Agreement provides.  For example, in 1999, the first full year

the agreement was in place, Harry Leff secretly paid himself $82,800, well more than double the

$36,000.00 he was entitled to.  Thereafter, these breaches continued unabated through some or

all of the intervening years, including 2014 when Harry Leff paid himself $77,000.00 in salary.

On information and belief since 1998, Leff has paid himself hundreds of thousands of dollars, or

more, in excess compensation.

17.     Nevertheless, Mr. Leff never obtained, let alone sought the written consent of the

Lindens to increase his compensation required by the Shareholders Agreement.  He acted

secretly and in violation of the Shareholders Agreement.

18.     The Lindens also have come to learn that for many years Harry Leff has spent

large amounts of company funds to pay for personal travel expenses, ostensibly as part of his

travel and entertainment allowance as provided for in the Shareholders Agreement.  Upon

information and belief, the expenditures did not benefit the company and were largely, if not entirely, for Leff's personal benefit.

19.     In addition, for many years Silver Road did not provide health insurance for the Lindens, in violation of the Shareholders Agreement.  Mr. Leff told Mr. Linden that Silver Road could not afford to provide the Lindens with health insurance, although, upon information and belief, Silver Road has been operating at a substantial profit for many years.   At the same time the Leffs were provided with health insurance by Silver Road.

20.     Since 1998, Harry Leff has maintained Silver Road's books and records, has had exclusive control and custody of the company accounts, and managed the company by himself. He also has discouraged Marc Linden from reviewing Silver Road's books and records.  Until very recently, the Lindens did not know of the improper disbursements Harry Leff made to himself, had no reason to question their trusted friend's management of the company, and relied on him to manage Silver Road fairly and honestly.

21.     The Lindens reasonably reposed their trust and confidence in Harry Leff, yet he betrayed them by using Silver Road for his personal benefit, breaching their Shareholders Agreement and his fiduciary duties to them as set forth herein.

## COUNT I
### (Breach of Shareholders Agreement - Direct)

22.     The allegations contained in paragraphs 1 through 21 are re-alleged and incorporated herein by reference.

23.     The Shareholders Agreement is a contract that the parties entered into for mutual consideration.  Through the actions described above, Harry Leff breached the Shareholders Agreement, by, among other things, paying himself excess compensation without the knowledge

-- much less the agreement -- of the Lindens.  Harry Leff further breached the Shareholders Agreement by failing to provide Marc Linden with health insurance.

24.     The Lindens have suffered monetary damages as a direct result of Harry Leff's breach of the Shareholders Agreement.

WHEREFORE, for the foregoing reasons, Plaintiffs Marc and Kaye Linden respectfully request that the Court grant the following relief:

A.     Enter judgment against Harry Leff and in favor of the Lindens in an amount to be proven at trial, but no less than $75,000.00, plus pre- and post-judgment interest and costs; and

B.     Order Harry Leff to provide a full accounting for Silver Road from 1998 to the present;

C.     Such other relief that the Court may deem appropriate.

## COUNT II
### (Breach of Fiduciary Duty– Derivative Claim)

25.     The allegations contained in paragraphs 1 through 24 are re-alleged and incorporated herein by reference.

26.     Harry Leff is both a Director of Silver Road, as well as its President.  As such, he owes a fiduciary duty to Silver Road and its shareholders, including the Lindens, such that his powers must be exercised for the common and general interest of Silver Road and not for his individual benefit.

27.     Harry Leff violated his fiduciary duty by paying himself excess compensation in violation of the Shareholders Agreement, and abused his travel and entertainment allowance by having Silver Road pay for travel expenses that did not benefit the company and were largely, if not entirely, for his and his wife's personal benefit.

28.     Silver Road has been damaged by Harry Leff's breaches of his fiduciary duty. A derivative action is necessary and appropriate here to protect the interests of Silver Road and its shareholders. Any pre-suit demand on Silver Road to compel Harry Leff to return to Silver Road the money he took would be futile, as he does not have the necessary disinterestedness and independence to evaluate such a demand on Silver Road's behalf.

WHEREFORE, for the foregoing reasons, Plaintiffs Marc and Kaye Linden respectfully request that the Court grant the following relief:

A.      Declare that Harry Leff committed a gross abuse of trust and breached his fiduciary duties owed to Silver Road, Inc. T/A Camp Ramblewood;

B.      Declare that any disbursements made by Harry Leff in excess of those permitted by the Shareholders Agreement were made in breach of the fiduciary duties of Silver Road and were therefore unlawful and unenforceable;

C.      Rescind and invalidate any disbursements made by Harry Leff made in breach of the fiduciary duties of Silver Road;

D.      Grant preliminary and permanent injunctive relief prohibiting payment by Silver Road to Leff of any amounts in excess of those permitted by the Shareholders Agreement;

E.      Impose a constructive trust, in favor of Silver Road, upon any benefits improperly received by Harry Leff as a result of his improper disbursements;

F.      Order Harry Leff to provide a full accounting for Silver Road from 1998 to the present;

G.      Order that a receiver be appointed, and thereafter authorized and empowered to take any and all actions the receiver may deem necessary and proper to manage and protect the assets of Silver Road to the benefit of all shareholders;

H.      Order that Silver Road and/or Harry Leff personally purchase the Lindens' stock at a price and on terms to be determined by the Court as fair and reasonable;

I.      Enter judgment against Harry Leff and in favor of Silver Road in the amount of his improper disbursements, pre- and post-judgment interest as well as attorney's fees and costs; and

J.      Such other relief that the Court may deem appropriate.

## COUNT III
### (Breach of Fiduciary Duty – Direct Claim)

29.     The allegations contained in paragraphs 1 through 28 are re-alleged and incorporated herein by reference.

30.     Harry Leff and the Lindens are shareholders in Silver Road.  Harry Leff is both a Director of Silver Road, as well as its President, and was a close personal friend of Marc Linden's for many years.  The Lindens had no experience in operating a camp, but due to their personal relationship with Harry Leff, they agreed to become co-owners of Silver Road.

31.     The Lindens reposed their trust and confidence in Harry Leff to manage Silver Road fairly and honestly, and in conformity with their Shareholders Agreement.

32.     Having gained the Lindens' confidence through his friendship, and his representations and assurances that he would act on behalf of Silver Road with the Lindens' interest in mind, Harry Leff maintained exclusive control over Silver Road's day-to-day management, and its business and financial affairs, as well as the custody of its books, records, and accounts.

33.     The Lindens depended on Harry Leff to manage the Company, and accordingly, Harry Leff owed and still owes a fiduciary duty to the Lindens as partners and shareholders of Silver Road.

9

34.     The Lindens have been damaged by Harry Leff's breaches of his fiduciary duty, specifically, the failure to provide health insurance to them as required by the Shareholders Agreement.

35.     As a result of the breach of fiduciary duty owed by Mr. Leff to the Lindens, the Lindens have suffered damages.

WHEREFORE, for the foregoing reasons, Plaintiffs Marc and Kaye Linden respectfully request that the Court grant the following relief:

A.     Enter judgment against Harry Leff and in favor of the Lindens in an amount to be proven at trial, but no less than $75,000.00, plus pre- and post-judgment interest and costs;

B.     Order that Silver Road and/or Harry Leff personally purchase the Lindens' stock at a price and on terms to be determined by the Court as fair and reasonable; and

C.     Such other relief that the Court may deem appropriate.

## COUNT IV
### (Constructive Fraud – Direct Claim)

36.     The allegations contained in paragraphs 1 through 35, are re-alleged and incorporated herein by reference.

37.     Harry Leff gained the Lindens' confidence through his friendship, and his representations and assurances that he would act on behalf of Silver Road with the Lindens' interests in mind.  Harry Leff thereby obtained exclusive control over Silver Road's day-to-day management, and its business and financial affairs, as well as the custody of its books, records, and accounts.

38.     The Lindens reposed their trust and confidence in Harry Leff to manage Silver Road fairly and honestly, and in conformity with their Shareholders Agreement.

39.     Due to the confidential relationship that they shared, Harry Leff owed the Lindens a legal and equitable duty that Leff breached by paying himself excess compensation in violation of the Shareholders Agreement, and by abusing his travel and entertainment allowance by having Silver Road pay for travel expenses that did not benefit the company and were largely, if not entirely, for his and his wife's personal benefit.

40.     This conduct constituted constructive fraud and it would be inequitable for Harry Leff to retain the money and benefits he took for his own benefit without the Lindens' knowledge or consent.

WHEREFORE, for the foregoing reasons, Plaintiffs Marc and Kaye Linden respectfully request that the Court grant the following relief:

A.      Enter judgment against Harry Leff and in favor of the Lindens in an amount to be proven at trial, but no less than $75,000.00, plus pre- and post-judgment interest and costs; and

B.      Such other relief that the Court may deem appropriate.

Respectfully Submitted,

LERCH, EARLY & BREWER, CHARTERED

_____/s/Stanley J. Reed_____
Stanley J. Reed (Bar #00315)
William A. Goldberg (Bar #16512)
3 Bethesda Metro Center, Suite 460
Bethesda, MD 20814
(301) 657-0177 (Telephone)
(301) 347-1796 (Facsimile)
sjreed@lerchearly.com
wagoldberg@lerchearly.com
*Counsel for Plaintiffs*

## JURY DEMAND

Plaintiffs request a trial by jury on all counts to which they are entitled.

_____/s/Stanley J. Reed_____
Stanley J. Reed

11